## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARCUS ABEYTA, and**
**ORCHID CHAMBER, INC.,**

     **Plaintiffs,**

**v.**                                  **CIV 11-1106 JH/RHS**

**COMMANDER STEVE WARFIELD,**
**in his individual and official capacities,**
**and CITY OF ALBUQUERQUE,**

     **Defendants.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion, and Memorandum in Support, to Dismiss Plaintiffs' Complaint [Doc. 9]. The Court has reviewed the parties' submissions and the relevant law and finds that the Motion should be granted in part.

### Background

Plaintiff Abeyta is the president and sole shareholder of Orchid Chamber, Inc., a New Mexico corporation, which operates a business described on its website as a "Hookah Lounge, Tobacco Mecca, and Performing Arts Center all majestically placed into the post modern nirvana." *See* Doc. 1 at ¶¶ 2, 3, 6, 9. The Orchid Chamber's business premises is within one unit of a strip mall, with a shared parking lot and sidewalk. *See id.* at ¶ 7. It offers "shisha," which is "a form of flavored tobacco product that is consumed through the use of a hookah or

1

water pipe." *Id.* at ¶ 10.  According to Plaintiffs, Shisha and hookahs are "commonly imported from the Middle East and are associated with the culture of predominantly Muslim countries in that region." *Id.*  No alcoholic beverages are sold on the premises.  *See id.* at ¶ 13.

In their Complaint, Plaintiffs allege that

> [O]fficers and agents of the Albuquerque Police Department, acting by and through Defendants Warfield and the City of Albuquerque, have established an unusually elevated and persistent presence in and around the Orchid Chamber in an effort to close the business down and suppress the constitutionally protected speech, expression, and association that occurs there.

*Id.* at ¶ 15.  Plaintiffs allege 23 separate instances of police presence at the Orchid Chamber or the adjacent parking lot, many of which included warrantless searches of the Orchid Chamber and/or its patrons, in the space of about 21 months.  *See id.* at ¶¶ 16-48.  They argue that

> In carrying out this deliberate campaign, custom, practice, and policy against Plaintiffs, Defendants are intentionally treating Plaintiff different than similarly situated neighboring businesses. There are other businesses in the vicinity, including the neighboring Walgreens store, where illegal activity occurs and is reported with greater frequency, yet Defendants do not subject such businesses to the same level of scrutiny as Plaintiffs' business.

*See id.* at ¶ 51.  Plaintiffs do not contend that Defendants violated the Equal Protection clause.  Instead, their allegations are based upon the First and Fourth Amendments.  *See id.* at 12-14.  Defendants' Motion argues that Plaintiffs lack standing to assert their claims because Plaintiffs cannot assert the rights of third parties like the patrons of the Orchid Lounge.  *See* Doc. 9 at 1.  Defendants also argue that Plaintiff has failed to set forth a plausible claim for relief.  *See*

*id.*  In addition to the constitutional claims, Plaintiffs contend that municipal liability exists for the City of Albuquerque (Count III), that they are entitled to declaratory and injunctive relief related to the alleged First Amendment violations (Count IX), and that Defendant Warfield is liable for unspecified torts pursuant to NMSA 1978, § 41-4-12.

## Legal Standard

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  Moreover, although the Court must assume the truth of the properly alleged, or "well-pleaded," facts in the Complaint, the Court has no obligation to accept conclusory allegations as true.  *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

In deciding a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Dismissal is not appropriate if the complaint contains "enough facts to state a claim

3

to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).)

## Analysis

The U.S. Constitution requires the existence of a "case or controversy" in order for a party to appear in court.  The "irreducible constitutional minimum of standing" requires that a party must have (1) suffered an "injury in fact," or an actual or imminent, concrete, and particularized invasion to a legally protected interest; (2) which is fairly traceable to the challenged action of the defendant; and (3) is redressable by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S 555, 560 (1992).

Assuming that the Article III requirements of standing are met, Plaintiffs must also satisfy prudential limits on the Court's exercise of jurisdiction.  *See Wyoming v. U.S. Dept. of Interior*, 674 F.3d 1220, 1230-31 (10th Cir. 2012).  First, a plaintiff generally must assert his or her own rights as opposed to the rights of a third party.  *See id.*  Second, the court must not adjudicate "generalized grievances" more properly addressed by another branch of government. *See id.* at 1231.  Third, the complaint "must fall within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question."  *Id.* (quoting *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450-51 (10th Cir. 1994)).

Defendants challenge Plaintiffs' constitutional standing to assert violations of the First and Fourth Amendment.  In both cases, Defendants focus on the required element of injury-in-fact.  Regarding the First Amendment, Defendants contend that Plaintiffs fail to assert facts to

4

establish their standing to assert First Amendment rights of their patrons. *See* Doc. 9 at 13

("[T]o the extent, if any, Plaintiffs claim that their patrons' First Amendment rights of assembly

and association have been somehow violated, this claim also fails because Plaintiffs' complaint

sets forth no factual averments establishing any third party standing."). As to the Fourth

Amendment, they argue no injury-in-fact exists because Plaintiffs cannot assert the Fourth

Amendment rights of their patrons. *See id.* at 13 ("[A] party must show that his/her *own* Fourth

Amendment rights were violated by a challenged search and seizure."). Defendants also point

out that "there are no allegations that Plaintiff Abeyta was seized or that property was taken or

destroyed." *Id.* at 14. Further, according to Defendants, the risk of any potential future injury to

Plaintiffs is speculative, based purely on Plaintiffs' belief in a "deliberate campaign, custom,

practice and polic[y] of the Albuquerque Police Department, instituted and directed by

Commander Warfield." *Id.* at 15.

## I.      First Amendment Claims

### A.      Standing to Assert Claims on Behalf of Third Parties

Defendants in the present case argue that Plaintiffs are not able to assert the First or

Fourth Amendment rights of their third-party customers. *See* Doc. 9 at 13. In fact, the Supreme

Court

> recognize[s] the right of litigants to bring actions on behalf
> of third parties, provided three important criteria are satisfied: The
> litigant must have suffered an "injury in fact," thus giving him a
> "sufficiently concrete interest" in the outcome of the issue in
> dispute; the litigant must have a close relation to the third party;
> and there must exist some hindrance to the third party's ability to
> protect his or her own interests.

5

*Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (citations omitted).  In *Powers*, for instance, a criminal defendant was permitted to raise the rights of a prospective juror, who was allegedly stricken by the prosecution for impermissible race-related reasons.  *See id.* at 411.

The Eighth Circuit applied the *Powers* test to determine whether a bar had standing to assert First Amendment rights of its co-owner in *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008).  *Hodak* involved a husband and wife who had formed a corporation, H/N Planning & Control, Inc. ("H/N") to open a bar in St. Peters, Missouri.  *See id.*, 535 F.3d at 900. The wife held the bar's liquor license in her name.  *See id.*  Allegedly, the City of St. Peters revoked the liquor license in retaliation for letters written by the husband and published in the local paper.  *See id.* at 901-02.  The district court allowed H/N to assert the husband's First Amendment retaliation claim, finding that the husband "was 'hindered' from protecting his own interests because of 'the lack of economic injury to himself,' which 'prevent[ed] Plaintiff Brian Hodak from protecting his own first amendment rights."  *See id.* at 902.  The Eighth Circuit reversed.  *See id.* at 904.  It held that "[a] party must show that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest."  *Id.*  Because Mr. Hodak was a plaintiff and had initially asserted his own First Amendment claim, the Eighth Circuit found third-party standing improper.  *See id.* ("[I]f a third party actually asserts his own rights, no hindrance exists, and third-party standing is improper.").  In so holding, the Eighth Circuit recognized other similar decisions from the Third, Eighth, Ninth, and Eleventh Circuits.  *See id.* at 904-05 (citing *Philadelphia Marine Trade Ass'n v. Comm'r*, 523 F.3d 140, 145 (3rd Cir. 2008);

6

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1381 (8th Cir.

1997); *Wedges/Ledges of Calif., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); and

*Knight v. Alabama*, 14 F.3d 1534, 1554 (11th Cir. 1994)).

      The Court need not consider whether Plaintiff Orchid Chamber, Inc. may assert the First

Amendment rights of its patrons, however.  Although their Complaint references multiple

incidents of alleged inspections of Orchid Chamber patrons, *see, e.g.,* Doc. 1 at ¶¶ 16, 19, 25, 27,

as well as incidents when patrons were asked to leave the premises, *see, e.g., id.* at ¶¶ 28, 34,

Plaintiffs maintain that their case "does not depend on asserting the constitutional rights of third

parties."  *See* Doc. 12 at 4.  Rather, Plaintiffs contend they have First and Fourth Amendment

rights of their own which are at issue in this case.  *See id.* at 8.  In any event, Plaintiffs do not

allege facts to support their right to bring this action on behalf of third parties.

      B.     Plaintiffs' Standing

      "[A] chilling effect on the exercise of a plaintiff's First Amendment rights may amount

to a judicially cognizable injury in fact, as long as it 'arise[s] from an objectively justified fear of

real consequences.'" *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir.

2006) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)).  For each alleged prior

restraint upon First Amendment activities, the court should consider whether "the restraint

actually chilled Plaintiffs' speech and association and [whether] such chilling effect was caused

by an objectively justified fear of real consequences."  *See Brammer-Hoelter v. Twin Peaks

Charter Acad.*, 602 F.3d 1175, 1183 (10th Cir. 2010).

Plaintiffs are not required to have a present intention to engage in the First Amendment activities they claim have been chilled.  *See Initiative*, 450 F.3d at 1089 ("It makes no sense to require plaintiffs simultaneously to say 'this statute presently chills me from engaging in XYZ speech,' and 'I have specific plans to engage in XYZ speech next Tuesday.'").  However, Plaintiffs must do more than make "a bare assertion that, as a result of government action, one is discouraged from speaking."  *Id.*  In cases of the present nature, plaintiffs can satisfy the injury-in-fact element of standing with a showing as follows:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because of* a credible threat that the statute will be enforced.

*Id.*

The Court finds there are sufficient allegations in Plaintiffs' Complaint to meet these requirements.  The events of October 8, 2010 and March 10, 2011 demonstrate Plaintiffs' past engagement in activities affected by the Defendants' governmental action.  Patrons' ability to "enjoy music, poetry, and other live artistic performances" is a central part of Plaintiffs' business plan and the purpose or identity of the Orchid Lounge.  *See* Doc. 1 at ¶¶ 11-12.  Plaintiffs further demonstrate a present desire to continue hosting events by hiring a private security firm on June 24, 2010 and installing a new security system on June 18, 2011.  *See id.* at ¶¶ 24, 41.  Finally, Plaintiffs have a plausible claim that they presently have no intention to host performances because of a credible threat posed by Defendants to shut them down.  *See, e.g.,* Doc. 12 at ¶¶ 28 (alleging that APD ordered all patrons to leave and that an APD officer told Plaintiff Abeyta that

8

APD was "going to have this place shut down" and spoke to the owner of an adjoining business

regarding tactics and strategies to have Plaintiffs' business closed), 30 (alleging that APD

officers ordered that a live rock band, for which Plaintiffs had obtained a noise permit, stop

playing), 34 (alleging that APD officers ordered all patrons to leave during a photo opportunity

and autograph signing event hosted by Plaintiffs), 48 (alleging that an APD officer "told Mr.

Abeyta that they were considering closing Plaintiffs' business").  The Court finds there are facts

alleged which are sufficient to move this case beyond the motion to dismiss stage with respect to

Plaintiffs' standing to assert First Amendment claims of their own.

C.      Substance of First Amendment Claims

> To successfully pursue a first amendment retaliation claim
> against a defendant who is not his employer, a plaintiff must
> establish the following elements:

> "(1) that the plaintiff was engaged in constitutionally
> protected activity; (2) that the defendant's actions caused the
> plaintiff to suffer an injury that would chill a person of ordinary
> firmness from continuing to engage in that activity; and (3) that the
> defendant's adverse action was substantially motivated as a
> response to the plaintiff's exercise of constitutionally protected
> conduct."

*Klen v. City of Loveland, Colo.*, 661 F.3d 498, 508 (10th Cir. 2011) (quoting *Worrell v.*

*Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  Defendants argue that Plaintiffs' only

constitutionally protected activity in this case is Plaintiff Abeyta's April 11, 2011 complaint to

the Independent Review Office (IRO) of the City's Policy Oversight Commission.  *See* Doc. 9 at

17-18.  Plaintiffs appear to characterize their everyday operations as First Amendment activity.

They contend they are each "an intended recipient of speech and expression that occurs at the

9

Orchid Chamber, as well as a publisher, disseminator, and circulator of that speech and expression."  *See* Doc. 12 at 10.  *See also* Doc. 1 at 13, ¶ 59 ("Plaintiffs were engaged in, and serving as a forum for, constitutionally protected forms of speech, expression, association, peaceable assembly, and petitioning in their place of business at the Orchid Chamber.").  They cite case law applying the First Amendment to activities of concert promoters and newspapers. *See id.* at 8-9 (collecting cases).

The Court acknowledges the applicability of the First Amendment to specific events hosted by and at the Orchid Lounge, such as the live music performance on October 8, 2010 and the photo opportunity and autograph signing with rap artist ABK on March 10, 2011.  *See* Doc. 1 at ¶¶ 30, 33.  *See also Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) ("Music, as a form of expression and communication, is protected under the First Amendment."); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65 (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works[,] fall within the First Amendment guarantee."); and *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) ("The First Amendment protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be opportunity to win their attention.'").

There is, however, no First Amendment right associated with the everyday operations of a smoking establishment.  The Supreme Court has long noted that in order to adequately protect First Amendment freedoms, courts must also protect the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."

10

*Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).  While this freedom of association

extends to organizations like the Jaycees, which "regularly engage[s] in a variety of civic,

charitable, lobbying, fundraising, and other activities worthy of constitutional protection under

the First Amendment," *id.* at 626-27, the Supreme Court has not recognized the right to

association in the context of a dance club, *see City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

> It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment. We think the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. Thus this activity qualifies neither as a form of "intimate association" nor as a form of "expressive association" as those terms were described in *Roberts.*

*City of Dallas*, 490 U.S. at 25.

In the present case, as in *City of Dallas*, there are no allegations that the patrons of the

Orchid Lounge are members of any organized association.  *See id.* at 24.  There are no

allegations that patrons of the Orchid Lounge are anything other than strangers who associate

merely because they have independent interests in shisha tobacco.  Outside of special events

such as those alleged on August 8, 2010, October 8, 2010 and March 10, 2011, the Court finds

the Orchid Lounge's operations unprotected by the First Amendment.  Plaintiffs have also

alleged cognizable First Amendment claims related to alleged retaliation for the April 11, 2011

IRO complaint.

The Court will now examine whether Plaintiffs have alleged enough facts in support of

their First Amendment retaliation claims based on the events of August 8, 2010, October 8,

2010, March 10, 2011, and April 11, 2011 "to state a claim to relief that is plausible on its face."
*See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).) After the first of these events, APD allegedly interfered with two events hosted at the Orchid Lounge, first ordering that music from a rock band, for which Plaintiffs had obtained a permit, cease; and second closing the business and ordering all patrons to leave during a photo opportunity/autograph-signing featuring nationally known music artist.  Additionally, Plaintiffs allege that APD conducted five searches of the Orchid Lounge and/or patrons thereof.  *See* Doc. 1 at ¶¶ 33-34, 36, 38, 40 & 48.  Three of the five searches allegedly occurred within a three-week span.  *See id.*  Moreover, on nine occasions, APD officers allegedly staked out the Orchid Lounge from the parking lot.  *See id.* at ¶¶ 29, 37, 38, 40, 42, 43, 44, 45, 48.

        In the Court's view, the Defendants' actions as detailed in the Complaint would chill a person of ordinary firmness from continuing to engage in activities protected by the First Amendment.  The Court notes that APD officers have "every right to ...park in the parking lot just as any other patron" of the Orchid Lounge.  *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009).  Law enforcement officers' "passive attendance and visibility" at a venue is not a violation of First Amendment rights.  *See id.*  However, the Court finds that Plaintiffs have alleged sufficient facts to suggest that Defendants' alleged adverse actions were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct, specifically including the events hosted by the Orchid Chamber on August 8, 2010, October 8, 2010, and March 10, 2011.

Plaintiffs have sufficiently "nudged their [First Amendment] claims across the line from conceivable to plausible," and their First Amendment claim will therefore not be dismissed.

**I.**     Fourth Amendment Claims

     A.     <u>Standing</u>

There is no issue regarding third-party standing to assert Fourth Amendment claims.  Not only have Plaintiffs disavowed any reliance upon the constitutional rights of third parties, *see* Doc. 12 at 4, but the law is clear.  Unlike First Amendment rights, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).  *Accord Simmons v. United States*, 390 U.S. 377, 389 (1968) ("[R]ights assured by the Fourth Amendment are personal rights, [which] ... may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure."); *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009) ("Because Fourth Amendment rights are personal, a defendant 'may only claim the benefits of the exclusionary rule if [his] own Fourth Amendment rights have in fact been violated.").

The only "standing" inquiry raised by Defendants' Motion is whether Plaintiffs' Fourth Amendment rights have been implicated by the actions alleged in the Complaint.  *See United States v. Stearn*, 597 F.3d 540, 551 (3rd Cir. 2010) ("The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated."); *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) ("Because Fourth Amendment rights are personal, the Supreme Court has stated that there

13

is no useful analytical purpose to be served by considering a matter of standing distinct from the merits of a defendant's Fourth Amendment claim."); *United States v. Green*, 275 F.3d 694, 698 n.3 (8th Cir. 2001) ("We use the term 'standing' as a shorthand reference to the issue of whether defendants' Fourth Amendment interests were implicated by the challenged government actions."); *United States v. Taketa*, 923 F.2d 665, 669-70 (9th Cir. 1991) ("Fourth amendment standing is quite different, however, from 'case or controversy' determinations of article III standing.  Rather, it is a matter of substantive fourth amendment law; to say that a party lacks fourth amendment standing is to say that *his* reasonable expectation of privacy has not been infringed.")

      B.     <u>Substance of Fourth Amendment Claims</u>

      The Fourth Amendment protects the public from "unreasonable searches and seizures." *See* U.S. Const. amend. IV.  "The Supreme Court long ago 'recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises.'" *Club Retro*, 568 F.3d at 195 (5th Cir. 2009) (quoting *New York v. Burger*, 482 U.S. 691, 699 (1987)).  Therefore, law enforcement officers act unconstitutionally when they enter a commercial property to search for evidence of a crime without a warrant[1], consent, or other exigent circumstances.  *See id.* (citing *Donovan v. Dewey*, 452 U.S. 594, 598, n.6 (1981)).  While a law enforcement officer may enter the premises "in the same manner as a private person," he is

---

[1]Warrantless searches may be acceptable in pervasively regulated businesses pursuant to a regulatory scheme.  *See Club Retro*, 568 F.3d at 197 (citing *New York v. Burger*, 482 U.S. at 700; *Donovan v. Dewey*, 452 U.S. at 599).  However, Defendants do not argue that this exception to the requirement of a warrant applies, nor do they identify any regulatory scheme that would authorize their alleged conduct.

not necessarily "authorized to conduct a general search for incriminating materials."  *See id.* at 196 (citing *Lewis v. United States*, 385 U.S. 206, 211 (1966)).  "[A]ccepting a public invitation is permissible, but, absent cause, does not justify searches once inside the commercial establishment."  *Id.* at 197.

Defendants argue that "[a] reasonable expectation of privacy only exists on business premises in those areas from which the public has been excluded."  *See* Doc. 9 at 16 (citing *United States v. Dunn*, 480 U.S. 294, 316 (1987) (Brennan, J., dissenting)).  Therefore, the only cognizable Fourth Amendment allegations, according to Defendants, arise out of alleged searches of non-public areas on March 10 and 24, 2011.  *See id.* at 16-17 (referencing Doc. 1 at ¶¶ 33-36).

Contrary to Defendants' position, "the reasonable expectation of privacy in any given property turns on the particular nature and circumstances surrounding the place to be searched." *United States v. Bute*, 43 F.3d 531, 536 (10th Cir. 1994).  For instance, "a lesser expectation of privacy likely would attach to the showroom of a car dealership than to a law office where guarded confidential files are kept or a warehouse in which the public is neither invited nor allowed."  *Id.* at 537.

Even where, as here, the premises in question invites the general public inside, the Supreme Court has rejected "the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees."  *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329 (1979).  Similar to the *Club Retro* case, the Tenth Circuit has held that officers' "protracted" conduct, or their "assertion of law

15

enforcement authority over the entire establishment"—turning off the lights, turning off the music, seizing the patrons for over an hour, and lining them up for sobriety checks—is conduct that "falls outside the normal limits of consent afforded by the general public and violates the Fourth Amendment." *Kozel v. Duncan*, 421 Fed.Appx. 843, 850 (10th Cir. 2011). Defendants' less intrusive conduct, such as observing patrons, asking patrons for their identification, and asking them questions, does not violate the Fourth Amendment. *See id.* at 850 (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002)).

In the present case, Plaintiffs allege only two incidents that plausibly constitute violations of the Fourth Amendment. At an autograph signing event on March 10, 2011, Plaintiffs contend that

> several members of the APD Gang Unit entered the premises without a warrant, carrying firearms, and wearing ski masks and body armor. The officers ordered all patrons to leave and closed the business, then searched and photographed the premises, including Mr. Abeyta's private office, without presenting a warrant or giving Plaintiffs any notice of the basis for their activities.

*See* Doc. 1 at 8, ¶ 34. On March 24, 2011, Plaintiffs claim that a plain-clothes officer "conducted a warrantless search of Plaintiffs' place of business, *including private areas behind the counter and Mr. Abeyta's private office*." *See* Doc. 1 at 9, ¶ 36. Insofar as Plaintiffs' Complaint rests upon these allegations, the Court will not dismiss Plaintiffs' Fourth Amendment claim.

### III.    Remaining Claims

A.    Municipal Liability

16

"[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993). Plaintiffs contend that Defendant Warfield "while acting as a municipal policymaker, he instituted and directed a deliberate campaign of causing unreasonable warrantless searches and seizures of Plaintiffs and their place of business—as well as threatened prosecution, bad-faith investigation, and legal harassment—for the purpose of closing the business down …" Doc. 12 at 19. In their Complaint, Plaintiffs reference "[t]he deliberate campaign of unlawfully searching, seizing, harassing, threatening and invading the privacy of Plaintiffs." Doc. 1 at 14, ¶ 66. Thus, the alleged municipal policy or custom at issue in Plaintiffs' municipal liability claim is not a general policy or practice, but a campaign directed specifically at Plaintiffs.

The type of policy or custom contemplated in municipal liability jurisprudence has been characterized as "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co*, 398 U.S. 144, 167-68 (1970)). Alternatively, municipal liability can arise from an absence of direction, as in a failure to adequately train or supervise, "so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

In the present case, Plaintiffs have not made factual allegations sufficient to demonstrate the kind of widespread practice that is required to support a claim for municipal liability.

17

Indeed, the Court has found only two instances in which Plaintiffs have made a cognizable

Fourth Amendment claim. Such instances are not "so permanent and well settled as to constitute

a 'custom or usage' with the force of law." Plaintiffs' Count III is therefore dismissed.

      **B.**      **Declaratory and Injunctive Relief for Alleged Violations of the First Amendment**

      For the same reasons set forth in Part I *infra*, the Court will not dismiss Plaintiffs' claims

for declaratory and injunctive relief, which are premised upon the alleged violations of the First

Amendment. Count IV will not be dismissed.

      **C.**      **New Mexico Tort Claims Act**

      The State's immunity from tort liability, granted pursuant to NMSA 1978, § 41-4-4(A),

is waived for damages "resulting from assault, battery, false imprisonment, false arrest,

malicious prosecution, abuse of process, libel, slander, defamation of character, violation of

property rights or deprivation of any rights … when caused by law enforcement officers while

acting within the scope of their duties." NMSA 1978, § 41-4-12. Plaintiffs contend that

Defendant Warfield should be held liable for unspecified torts under this section. *See* Doc. 1 at

16-17. Defendants argue "[t]here are no allegations that Commander Warfield was involved in

and/or directed the two searches that allegedly took place in March 2011." *See* Doc. 9 at 21.

      Given that the Court has dismissed all other Fourth Amendment claims, the Court will

examine only the allegations regarding the March 10, 2011 and March 24, 2011 searches of the

Orchid Lounge. There is no reference to Defendant Warfield in the allegations concerning the

March 24, 2011 search of private areas. *See* Doc. 1 at ¶ 36. Regarding the March 10, 2011

incident, Plaintiffs alleged that the Albuquerque Fire Department performed a fire code

inspection "at the direction of Defendant Warfield." *See id.* at ¶ 35.  Performance of a fire code inspection is not a tort.  Plaintiffs have not alleged facts sufficient to render Defendant Warfield's tort liability plausible, and Count V is therefore dismissed.

## Conclusion

Defendants' Motionto Dismiss Plaintiffs' Complaint [Doc. 9] is granted in part.  Count I, alleging violations of the Fourth Amendment is dismissed in its entirety, except as to claims arising from Defendants' March 10 and 24, 2011 searches and seizures of the Orchid Lounge, including Mr. Abeyta's private office.  Count II, alleging violations of the First Amendment, is dismissed except as to prior restraint claims arising from the events of August 8, 2010, October 8, 2010, and March 10, 2011.  Count III, alleging municipal liability is dismissed in its entirety due to Plaintiffs' failure to allege facts sufficient to render the claim plausible.  Count IV, seeking declaratory and injunctive relief, is tied to Count II and therefore survives insofar as it is related to the events of August 8, 2010, October 8, 2010, and March 10, 2011.  Finally, Count V, alleging violations of the New Mexico Tort Claims Act, is dismissed, as there are not facts alleged to render it plausible.

_____
UNITED STATES DISTRICT COURT JUDGE

19