IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCOS ABEYTA, and
ORCHID CHAMBER, INC.,

     Plaintiffs,

vs.                                       Civ. No. 11-1106 KG/SCY

COMMANDER STEVE WARFIELD,
in his individual and official capacities
and SGT. BRET WHITE and SGT. MICHAEL
SWANSON, in their individual and official
capacities,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter comes before the Court upon Defendants' Motion, and Memorandum in
Support, for Judgment on the Pleadings Requesting Dismissal of Plaintiffs' Amended Complaint
(Motion for Judgment on the Pleadings), filed September 20, 2013.  (Doc. 52).  Plaintiffs filed a
response on October 18, 2013, and Defendants filed a reply on November 12, 2013.  (Docs. 60
and 65).  Having considered the Motion for Judgment on the Pleadings; the accompanying
briefs; the First Amended Complaint for Civil Rights Violations, Tort Claims, and Damages
(Amended Complaint) (Doc. 47); and the September 24, 2012, Memorandum Opinion and Order
(Doc. 22) authored by the Honorable United States District Court Judge Judith Herrera,[1] the
Court grants the Motion for Judgment on the Pleadings and will dismiss the Amended
Complaint.  The Court also denies Plaintiffs' request to file a second amended complaint.

---

[1] Judge Herrera previously presided over this case and dismissed, in part, the original complaint
(Doc. 1) as explained in her September 24, 2012, Memorandum Opinion and Order.

A. *The Amended Complaint*

Plaintiff Marcos Abeyta owned and operated Plaintiff Orchid Chamber, Inc. (Orchid Chamber), a hookah lounge, which hosted various events, including artistic performances. (Doc. 47) at ¶¶ 2 and 10. The Orchid Chamber occupied one unit at a strip mall, sharing a parking lot and sidewalk with other businesses at the strip mall. *Id*. at ¶ 8. Although the Orchid Chamber sold tobacco products to legal adults, it did not sell alcoholic beverages nor did it permit intoxicated persons or controlled substances on the premises. *Id.* at ¶ 14. Plaintiffs maintain that they "made every reasonable effort to ensure that the Orchid Chamber operate[d] in compliance with the law." *Id.* at ¶ 15.

Plaintiffs contend that

officers and agents of the Albuquerque Police Department, acting by and through Defendants Warfield and, [sic] White and Swanson established an unusually elevated and persistent presence in and around the Orchid Chamber in an effort to close the business down and suppress the constitutionally protected speech, expression, and association that occurs there.

*Id.* at ¶ 16. In support of this contention, Plaintiffs allege that multiple police encounters at the Orchid Chamber or the adjacent parking lot, including several warrantless searches of the Orchid Chamber, occurred beginning on June 24, 2010, and ending on December 1, 2011. *Id.* at ¶¶ 17-36. Plaintiffs also contend that "[t]here are other businesses in the vicinity, including the neighboring Walgreens store, where illegal activity occurs and is reported with greater frequency, yet Defendants do not subject such businesses to the same level of scrutiny as Plaintiffs' business." *Id.* at ¶ 39. Additionally, Plaintiffs allege that they submitted a complaint to the City of Albuquerque's Independent Review Office of the Police Oversight Commission to complain about the police activity at the Orchid Chamber. *Id.* at ¶ 50. Finally, Plaintiff Abeyta

asserts that because of Defendants' actions he was forced to sell the Orchid Chamber.  *Id.* at ¶ 42.

In Count I of the Amended Complaint, Plaintiffs bring Fourth Amendment claims under 42 U.S.C. § 1983 which assert that, between February 20, 2010, and December 1, 2011, Defendants caused "unreasonable warrantless searches and seizures of Plaintiffs' property...." *Id.* at ¶ 45.  In Count II, Plaintiffs bring First Amendment claims under Section 1983 which assert that Defendants interfered with "Plaintiffs' constitutionally protected speech, expression, association, peaceable assembly, and petitioning."  *Id.* at ¶ 51.  In Count III, Plaintiffs bring Fourteenth Amendment equal protection claims under Section 1983 which assert that Defendants treated "Plaintiffs differently than similarly situated businesses without lawful justification."  *Id.* at ¶ 55.  In Count IV, Plaintiffs bring Fourteenth Amendment procedural due process claims under Section 1983 which assert that Defendants denied Plaintiffs "the right to receive notice and a full and fair opportunity to be heard before being unreasonably targeted by Defendants for high profile police activity."  *Id.* at ¶ 59.  Finally, in Count V, Plaintiffs bring New Mexico Tort Claims Act (NMTCA) claims which assert that (1) Defendants violated the New Mexico Constitution's equal protection clause by "singl[ing] out the Orchid Chamber as the primary business causing calls for service" at the strip mall, and (2) Defendant Warfield caused "other Defendants or third persons to commit one or more of the torts, statutory violations, or constitutional violations enumerated in Section 41-4-12 of the New Mexico Tort Claims Act, including but not limited to conducting unlawful searches and seizures at Plaintiffs' place of business, defamation of Plaintiff's character, and failing to properly investigate crimes...."  *Id.* at ¶¶ 64 and 65.

*B.  The Motion for Judgment on the Pleadings*

Defendants seek dismissal of all of Plaintiffs' claims and raise the following arguments in support of their Motion for Judgment on the Pleadings.  First, Defendants argue that the law of the case doctrine bars Plaintiffs' attempt to revive claims previously dismissed  by Judge Herrera.  Second, Defendants argue that the statutes of limitations bar (1) the federal claims against Defendants White and Swanson premised upon events that allegedly took place prior to August 6, 2010, and (2) the state law claims against Defendants White and Swanson premised on events that allegedly took place prior to August 6, 2011.  Third, Defendants argue that they are entitled to qualified immunity on the federal claims.  Finally, Defendants argue that the NMTCA does not waive immunity for the state claims.

Plaintiffs contest Defendants' first three arguments, but seemingly do not contest the last argument regarding the NMTCA claims.  In the alternative, Plaintiffs request that the Court allow them to file a second amended complaint under Fed. R. Civ. P. 15(a)(2) to cure any deficiencies in the Amended Complaint.

*C.  Standard of Review*

A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings uses the same standard of review that applies to a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See, e.g., Adams v. Jones*, 577 Fed. Appx. 778, 781-82 (10th Cir. 2014).  In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the

elements of a cause of action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

To avoid a Rule 12(b)(6) dismissal based on the defense of qualified immunity, plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  If a plaintiff fails to demonstrate that a defendant's conduct violated a constitutional right, then the Court need not reach the additional question of whether the law was clearly established.  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

D.  *Discussion*

1. *Whether the Law of the Case Doctrine Bars Any Claims*

In ruling on the motion to dismiss the original complaint, Judge Herrera dismissed the Fourth Amendment claims, "except as to claims arising from Defendants' March 10 and 24, 2011 searches and seizures of the Orchid Chamber, including Mr. Abeyta's private office," for failure to state a plausible claim.  (Doc. 22) at 19.  Judge Herrera also dismissed the First Amendment claims, "except as to prior restraint claims arising from the events of August 8, 2010, October 8, 2010, and March 10, 2011," for failure to state a plausible claim.  *Id*.  In

addition, Judge Herrera dismissed the NMTCA claims for failure to state a plausible claim. *Id.*
Although Judge Herrera did not indicate whether the dismissals were with or without prejudice,
the Court assumes that the dismissals were with prejudice because Rule 12(b)(6) rulings are
adjudications on the merits. *See Goings v. Sumner County Dist. Attorney's Office*, 571 Fed.
Appx. 634, 639 (10th Cir. 2014) (Rule 12(b)(6) adjudication is on merits so dismissal is with
prejudice, unless otherwise specified); Fed. R. Civ. P. 41(b) ("Unless the dismissal order states
otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule-except one
for lack of jurisdiction, improper venue, or failure to join a party under Rule 19-operates as an
adjudication on the merits.").

    Defendants argue that the law of the case doctrine established by Judge Herrera bars
Plaintiffs from now raising Fourth and First Amendment claims in the Amended Complaint
which Judge Herrera previously dismissed.[2]  Plaintiffs do not argue that Judge Herrera's decision
should be overturned.  Instead, Plaintiffs contend that they are entitled to plead comprehensive
factual allegations which include incidents other than those which Judge Herrera found to
support the original Fourth and First Amendment claims.

    The law of the case doctrine does not apply to rulings entered prior to the entry of a final
judgment. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).  Courts, therefore
are allowed to reconsider previous interlocutory orders. *Id.*  "This principle remains true even
when a case is reassigned from one judge to another in the same court:  '[T]he [law of the case]
doctrine does not bind a judge to following rulings in the same case by another judge of
coordinate jurisdiction as along as prejudice does not ensue to the party seeking the benefit of the
doctrine.'" *Id.* (quoting *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993)).  That

---

[2] Defendants do not seem to argue that the law of the case doctrine applies to the NMTCA
claims.  The Court will address those claims, *infra.*

prejudice "is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling." *Id.* (citing *Johnson*, 12 F.3d at 1544).

Clearly, the Court is not bound by Judge Herrera's decision. However, having fully considered Judge Herrera's decision and finding no prejudice to Defendants, the Court adopts Judge Herrera's reasoning with respect to the Fourth and First Amendment claims raised in the Amended Complaint. Consequently, the Court will dismiss with prejudice, for failure to state a plausible claim, (1) the Fourth Amendment claims, except for the claims arising from Defendants' March 10 and 24, 2011, searches and seizures of the Orchid Chamber, including Plaintiff Abeyta's private office, and (2) the First Amendment claims, except for the prior restraint claims arising from the events of August 8, 2010, October 8, 2010, and March 10, 2011.

   *2. Whether Statutes of Limitations Bar Certain Federal and State Claims Against Defendants White and Swanson*

Defendants also argue that statutes of limitations bar (1) the federal claims against Defendants White and Swanson premised upon events which allegedly took place prior to August 6, 2010, and (2) the state law claims against Defendants White and Swanson which are premised on events which allegedly took place prior to August 6, 2011. Defendants White and Swanson assert that because they were added as parties on August 6, 2013, when Plaintiffs filed the Amended Complaint, statutes of limitations bar any federal claims premised on events taking place three years prior to August 6, 2013, and any state claims premised on events taking place two years prior to August 6, 2013. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (statute of limitations for New Mexico Section 1983 claims is three years); NMSA 1978, § 41-4-15(A) (1996 Repl. Pamp.) (statute of limitations for NMTCA claims is two years). Additionally, Defendants White and Swanson contend that under both Fed. R. Civ. P.

15(c)(1)(C) and NMRA Rule 1-015(C) (2014 ed.) the untimely claims cannot relate back to the original complaint filed on December 16, 2011.  Plaintiffs argue that the untimely claims against Defendants White and Swanson relate back to the date of the original complaint or, in the alternative, that those claims accrued within the respective statutes of limitations.

<em>a.  Relation Back of Claims Against Defendants White and Swanson</em>

Both Federal Rule of Civil Procedure 15(c)(1)(C) and NMRA Rule 1-015(C) state that an amendment to a pleading which changes a party relates back to the date of the original pleading if, among other requirements, the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  *See also* NMRA Rule 1-015(C)(2) (the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.").  Merely lacking knowledge of a proper party does not constitute a "mistake" regarding the proper party's identity.  *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *Romero v. Ole Tires, Inc.*, 1984-NMCA-092, ¶ 19, 101 N.M. 759.  Under both federal and state law, the burden lies with the plaintiff to show that an amended complaint relates back to a previous complaint.  *See Al-Dahir v. F.B.I.*, 454 Fed. Appx. 238, 242 (5th Cir. 2011); *Rivera v. King*, 1988-NMCA-093, ¶ 20, 108 N.M. 5.

Here, Plaintiffs have not carried their burden of demonstrating that Defendants White and Swanson knew or should have known that this action would have been brought against them, but for a mistake concerning their identities.  Instead, it appears that Plaintiffs simply lacked knowledge of Defendants White and Swanson.  Consequently, the federal claims against Defendants White and Swanson premised upon events which allegedly took place prior to August 6, 2010, and the state law claims against Defendants White and Swanson premised on

events which allegedly took place prior to August 6, 2011, do not relate back to the date of the original complaint.

### b.  Accrual Dates for Claims Against Defendants White and Swanson

Alternatively, Plaintiffs argue that the above claims accrued within the relevant statutes of limitations.  In a federal lawsuit, federal law determines when claims accrue and, therefore, when the statute of limitation, whether state or federal, begins to run.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Under what is known as the federal discovery rule, "claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).  The Tenth Circuit focuses "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm."  *Id.* at 1216.  *See also Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) ("A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim.").  In light of this focus, "a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief."  *Alexander*, 382 F.3d at 1216.

In this case, Plaintiffs maintain that the earliest they could have known or should have known of Defendants White and Swanson's involvement in this case was when Plaintiffs received Defendants' initial disclosures, which Defendants mailed on March 1, 2013.  (Doc. 60) at 9.  Plaintiffs, however, knew of the police activity at the Orchid Chamber at the time it happened.  Moreover, that police activity would have put a reasonable person on notice that the activity caused Plaintiffs to be harmed.  Plaintiffs also do not demonstrate that they used

reasonable diligence before March 1, 2013, to discover Defendants White and Swanson's involvement in the police activity at the Orchid Chamber.  Plaintiffs' argument that the untimely claims accrued within the relevant statutes of limitations fails.  In sum, statutes of limitations bar the federal claims against Defendants White and Swanson premised upon events which allegedly took place prior to August 6, 2010, as well as the state law claims against Defendants White and Swanson premised on events which allegedly took place prior to August 6, 2011.  The Court will dismiss those claims with prejudice.  *See Rodriguez v. Colorado,* 521 Fed. Appx. 670, 671 (10th Cir. 2013) ("we treat a dismissal without prejudice as a dismissal with prejudice when the statute of limitations has run on the claims.").

     *3.  Whether Defendants are Entitled to Qualified Immunity on the Federal Claims*

     Defendants claim that they are also entitled to qualified immunity on the federal claims.[3] First, Defendants argue that Plaintiffs have not alleged facts which plausibly show that Defendants, as supervisors, are liable under Section 1983 for violations of the Fourth and First Amendments.[4] Second, Defendants argue that Plaintiffs have not alleged facts which plausibly show that Defendants violated Plaintiffs' Fourteenth Amendment right to equal protection. Finally, Defendants argue that Plaintiffs have not alleged facts which plausibly show that Defendants violated Plaintiffs' Fourteenth Amendment right to procedural due process.

---

[3] The fact that qualified immunity is raised for the first time in the Motion for Judgment on the Pleadings does not preclude Defendants from raising it now.  *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir. 1991), *overruled on other grounds by Saucier v. Katz,* 533 U.S. 194 (2001) (qualified immunity can be raised throughout litigation process).

[4] Although Defendants also make this argument regarding the Fourteenth Amendment claims, Plaintiffs only focus on how that argument applies to the Fourth and First Amendment claims. The Court will, likewise, focus on the Fourth and First Amendment claims and address the Fourteenth Amendment claims, *infra*.

*a. Supervisory Liability as to the Fourth and First Amendment Claims (Counts I and II)*

To establish Section 1983 liability against a defendant based on supervisory duties, a plaintiff must demonstrate an affirmative link between the supervisor and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). This affirmative link requirement embodies three elements: "(1) personal involvement, (2) causation, and (3) state of mind." *Id.* "'[A] supervisor's mere knowledge of his subordinate's conduct'" does not amount to an affirmative link. *Id.* (citation omitted).

*(1)  Personal Involvement*

In *Iqbal*, the United States Supreme Court "articulated a stricter liability standard for this first element of personal involvement" than courts had previously required. *Id.* at 768 (citing *Iqbal,* 556 U.S. at 676). The Tenth Circuit has yet "to address the precise contours" of the stricter liability standard for the personal involvement element. *Id.* Nonetheless, if a plaintiff cannot meet the pre-*Iqbal* personal involvement element, then the plaintiff necessarily cannot meet a stricter liability standard. Before *Iqbal*, a plaintiff could demonstrate a supervisor's personal involvement by showing "'personal participation, his exercise of control or direction, or his failure to supervise.'" *Id.* (citation omitted). A plaintiff could also demonstrate a supervisor's personal involvement by showing that a "'supervisor's promulgation, creation, implementation, or utilization of a policy" caused a constitutional violation. *Id.* (citation omitted).

In this case, Plaintiffs arguably fail to allege facts which show that under the more lenient pre-*Iqbal* personal involvement standard Defendants White and Swanson personally participated in the remaining Fourth and First Amendment claims. *See* (Doc. 47) at ¶ 30 (on  March 10, 2011, "several members of the APD Gang Unit" searched the premises, including Plaintiff

Abeyta's office, without a warrant), ¶ 32 (on March 24, 2011, "<u>a plain-clothes law enforcement</u> <u>officer</u> arrived in an unmarked vehicle and conducted a warrantless search of Plaintiffs' place of business," including behind the counter and Plaintiff Abeyta's office), ¶ 19 (on August 8, 2010, an officer "driving a white marked Chevy Tahoe police vehicle in the parking lot (<u>believed to be</u> <u>Defendant White</u> <i>or</i> <u>Defendant Swanson</u>) told Mr. Abeyta that he was Mr. Abeyta's 'boss'" and required Plaintiff Abeyta to allow non-customers to use the Orchid Chamber despite Plaintiffs' policy), and ¶24 (on October 8, 2010, "<u>APD officers</u> arrived, ordered that the music cease, and confiscated" Plaintiff Abeyta's noise permit).  Emphasis added.

The Court, nonetheless, acknowledges that Plaintiffs allege that (1) on September 17, 2010, Defendant Swanson and others "implemented a 'One Day Tactical Plan' focusing on the Orchid Chamber because the business had reports of Loitering and Disturbance calls;" (2) on September 30, 2010, "an officer working directly under the supervision of Defendant White or Defendant Swanson developed a Tactical Operation plan targeting the Orchid Chamber" which "encouraged 'no tolerance enforcement;'"  (3) on February 24, 2011,  "an officer working directly under the supervision of Defendant White or Defendant Swanson developed a Tactical Operation plan targeting the Orchid Chamber" which "encouraged 'no tolerance enforcement;'" (4) "an officer working directly under the supervision of Defendant White developed a Tactical Operation plan targeting the Orchid Chamber;" and (5) that on June 24, 2011, "officers appeared in the parking lot outside Plaintiffs' place of business and surveyed the scene" as instructed by "Defendant Warfield, Defendant White or Defendant Swanson, as part of an ongoing 'Tactical Operation Plan' directing them to demand identification, issue citations, and make arrests without reservation as part of a policy of 'zero tolerance' toward any type of misconduct or illegal activity with respect to the Orchid Chamber, its patrons, and the adjacent parking lot."  *Id.*

at ¶¶ 22, 23, 27, 28, and 35.

The September 17, 2010, and June 24, 2011, allegations regarding Tactical Operation Plans do not apply to the events at issue in the remaining Fourth and First Amendment claims. However, the remaining allegations regarding Tactical Operation Plans plausibly demonstrate that Defendants White or Swanson purposefully promulgated, created, implemented, or utilized a policy aimed specifically at the Plaintiffs.  A reasonable officer in these circumstances would have known that, even under a more stringent personal involvement standard, purposefully promulgating, creating, implementing, or utilizing a policy aimed at a specific individual and business constitutes personal involvement.  Consequently, Plaintiffs have alleged sufficient facts to plausibly meet the personal involvement element with respect to their Fourth and First Amendment claims against Defendants White and Swanson.

The Court notes that Defendant Warfield is absent from the relevant allegations regarding Tactical Operation Plans. In addition, the allegations concerning the events which support the Fourth and First Amendment claims do not aver that Defendant Warfield personally participated in those events.  Plaintiffs also do not allege any facts which show that Defendant Warfield actually controlled the police officers at the events at issue or that he directed police officers to act as they allegedly did at those events.  Plaintiffs further do not allege that Defendant Warfield failed to supervise the police officers at the events at issue.  The Court, therefore, finds that Plaintiffs have not plausibly alleged facts showing that Defendant Warfield was personally involved in the events at issue in the Fourth and First Amendment claims.

*(2)  Causation*

The Court notes that, unlike the personal involvement element, *Iqbal* did not alter the causation analysis.  *Schneider*, 717 F.3d at 768.  To establish the requisite causation, a plaintiff

must only allege facts which show that a "'defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id.* (citation omitted).  Here, Plaintiffs allege that Defendants White and Swanson developed Tactical Operation Plans which "encouraged" no tolerance for illegal activity or misconduct.  (Doc. 47) at ¶¶ 23, 27, and 28.  Viewing the Amended Complaint in the light most favorable to Plaintiffs, the Court could reasonably infer that Defendants White and Swanson knew or reasonably should have known that these Tactical Operation Plans would result in a police presence at the Orchid Chamber and in the adjacent parking lot and sidewalk. Plaintiffs, however, have not alleged any facts from which the Court could reasonably infer that Defendants, including Defendant Warfield, knew or reasonably should have known that the police presence would set in motion a series of events which caused Plaintiffs to be deprived of their Fourth and First Amendment rights.  Plaintiffs have, therefore, not plausibly alleged facts which show that Defendants meet the causation element.[5]  For the above reasons, the Court concludes that Plaintiffs have not alleged plausible supervisory liability claims against Defendants with respect to the Fourth and First Amendment claims.  Hence, Defendants are entitled to qualified immunity on Counts I and II of the Amended Complaint.

> *b.  The Fourteenth Amendment Equal Protection Claims (Count III)*

To state a plausible equal protection claim, a plaintiff must allege facts which show that he was treated differently than others "*who are in all relevant respects alike.*"  *Taylor v. Roswell Ind. Sch. Dist.*, 713 F.3d 25, 53-54 (10th Cir. 2013).  Here, Plaintiffs allege in the Amended

---

[5] In light of the Court's conclusions concerning the personal involvement and causation elements of supervisory liability, the Court finds it unnecessary to address the state of mind element.  *See, e.g., Dillon v. Murray*, 853 F. Supp. 199, 206 n. 7  (W.D. Va. 1994) ("The court declines to discuss the third element in the plaintiff's *prima facie* case for supervisory liability, finding such discussion unnecessary since Plaintiff has failed to satisfy the first elements….").

Complaint that:

> 39.  There are other businesses in the vicinity, including the neighboring Walgreens store, where illegal activity occurs and is reported with greater frequency, yet Defendants do not subject such businesses to the same level of scrutiny as Plaintiffs' business.
>
> 40.  Defendants supported and encouraged the numerous tactical plans directed at the Orchid Chamber, although other businesses in the same strip mall or on the same block also created calls for service, and the area was one with a history of criminal activity prior to the opening of the Orchid Chamber.

(Doc. 47).  Defendants correctly argue that Plaintiffs do not allege facts which show that the Walgreens and the Orchid Chamber are "in all relevant respects alike."  Plaintiffs, for instance, do not allege that the Walgreens is an entertainment venue like the Orchid Chamber.  Plaintiffs have, thus, not alleged a plausible Fourteenth Amendment equal protection claim.  Consequently, Defendants are entitled to qualified immunity on Count III of the Amended Complaint.

### c. *Fourteenth Amendment Procedural Due Process Claims (Count IV)*

Procedural due process, in a business context as in this case, applies only where the government deprives a person "of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  Here, Defendants argue that Plaintiffs have not alleged in the Amended Complaint "any specific protective liberty or property interest … which they claim that they were deprived of without a hearing."  (Doc. 65) at 8.  Plaintiffs, however, allege in the Amended Complaint that Defendants deprived them of their liberty and property interests in "privacy, reputation, employment, speech, expression, and association."  (Doc. 47) at ¶ 59.  Plaintiffs' interest in a livelihood constitutes a protected liberty interest.  *See, e.g., United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 486 (6th Cir. 2014).  Moreover, Plaintiffs' interests in reputation, speech, expression, association, and privacy could also be construed as liberty interests.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from

the Constitution itself, by reason of guarantees implicit in the word 'liberty.'"); *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1149 (10th Cir. 2014) (acknowledging protected liberty interest in one's own reputation).  Plaintiffs have, therefore, pled plausible liberty interests protected by procedural due process.

Defendants then argue that Plaintiffs are, nonetheless, not entitled to a predeprivation hearing, as they allege they are entitled to in the Amended Complaint, and that Plaintiffs did not make any factual averments that Defendants provided inadequate postdeprivation remedies to Plaintiffs.  The United States Supreme Court has held that when the government needs to take quick action or when a meaningful predeprivation hearing is impractical, and the government provides a meaningful post-deprivation hearing, the government satisfies procedural due process requirements.  *Hudson v. Palmer*, 468 U.S. 517, 531-32 (1984).  For example, the government need not provide a predeprivation hearing where loss of property is beyond the government's control, e.g., "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure…." *Id.* at 532.  "The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.*  at 534.

In this case, Plaintiffs contend that because the Tactical Operation Plans resulted in deprivations of Plaintiffs' liberty interests and because the Tactical Operation Plans were not random or unauthorized acts by government employees, i.e., the Tactical Operation Plans were established procedures, procedural due process required a predeprivation hearing.  Plaintiffs, however, do not aver any facts to suggest that the Tactical Operation Plans and the decision to require a police presence, in themselves, deprived Plaintiffs of any protected interests.  Rather, the Court could reasonably infer from the facts alleged in the Amended Complaint that individual officers implemented the Tactical Operation Plans at the Orchid Chamber in a

16

seemingly random and unauthorized manner which allegedly deprived Plaintiffs of liberty

interests.  Plaintiffs' allegations, therefore, do not state a plausible claim that Defendants violated

Plaintiffs' right to procedural due process by failing to provide a predeprivation hearing.

Moreover, Plaintiffs do not allege any facts to indicate that Defendants denied them an

opportunity for a meaningful postdeprivation hearing.  Consequently, Defendants are entitled to

qualified immunity on Count IV of the Amended Complaint.

### 4.  *Plaintiffs' Request to File a Second Amended Complaint*

Plaintiffs request that in the event the Court concludes that Plaintiffs have not stated

plausible federal claims, the Court allow them to file another amended complaint to cure any

outstanding deficiencies.  However, as the Tenth Circuit has held, "a bare request to amend in

response to a motion to dismiss is insufficient to place the court and opposing parties on notice

of the plaintiff's request to amend and the particular grounds upon which such a request would

be based."  *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th

Cir. 2014).  The Tenth Circuit explained that such a request to amend is unsupported by either

argument or a proposed amended complaint.  *Id.*  That is the case here.  Moreover, the Court

notes that the deadline for filing an amended complaint expired prior to the filing of this Motion

to Dismiss and that Plaintiffs, therefore, would be required to seek a modification of the

Scheduling Order under Fed. R. Civ. 16(b)(4) to extend the deadline for filing another amended

complaint, which Plaintiffs have not done.  For these reasons, the Court denies Plaintiffs' request

to file a second amended complaint.

### 5. *The NMTCA Claims (Count V)*

Because the Court has not found that Plaintiffs have alleged plausible federal claims, the

Court can only hear the remaining NMTCA claims if it exercises supplemental jurisdiction over

17

those claims.  *See* 28 U.S.C. § 1367.  When all federal claims have been dismissed from a case, state claims based on supplemental jurisdiction will ordinarily be dismissed without prejudice. *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1237 (10th Cir. 1997).  Because this Court has decided it will dismiss the federal claims over which it has original jurisdiction and finds no reason to depart from the ordinary rule, it declines to exercise supplemental jurisdiction over Plaintiffs' remaining NMTCA claims and, as a result, it will dismiss those claims without prejudice.

IT IS ORDERED that

1.  Defendants' Motion, and Memorandum in Support, for Judgment on the Pleadings Requesting Dismissal of Plaintiffs' Amended Complaint (Doc. 52) is granted;

2.  Plaintiffs' request to amend the Amended Complaint is denied;

3.  Counts I, II, III, and IV of the Amended Complaint will be dismissed with prejudice;

4.  the Count V claims against Defendants White and Swanson which are premised on events which allegedly took place prior to August 6, 2011, will be dismissed with prejudice; and

5.  the remainder of the Count V claims will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

18